UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
NANCY DONDERO,

                              Plaintiffs,            Case No.     20-3122 ( )

      -against-                                 **VERIFIED COMPLAINT**

CHOPRA & NOCERINO LLP,
BRETT L. KULLER, Esq., SAMEER CHOPRA,
Esq. and ALEX NOCERINO, Esq.,            **JURY TRIAL DEMANDED**

                              Defendant.
-------------------------------------------------------------X

Plaintiff, NANCY DONDERO, as and for her complaint against Defendants CHOPRA & NOCERINO LLP, BRETT L. KULLER, Esq. SAMEER CHOPRA, Esq. and ALEX NOCERINO, Esq, complaining of the defendants, alleges and shows to the Court as follows:

## NATURE OF THE ACTION

1. This is an action for legal malpractice and breach of fiduciary duty arising under the laws of the State of New York.

## SUBJECT MATTER JURISDICTION

2. The court has subject matter jurisdiction pursuant to 28 U.S.C. Sections 1332(a) (1) and 1367. The amount in controversy exceeds $ 75,000.

3. Venue is proper in this Court under 28 U.S.C. Section 1391(a).

## THE PARTIES

4. Defendant CHOPRA & NOCERINO, LLP ("C & N") is a law firm within this district and is subject to personal jurisdiction on the basis of the location of the principal place of business at 100 Quentia Roosevelt Boulevard, Garden City, New York 11501. For the purposes of diversity

jurisdiction C & N is a citizen of the State of New York.

5. Defendant BRETT L. KULLER, Esq ("Kuller") is an attorney is a partner, associate, employee, staff attorney, contract attorney or "of counsel attorney" of Defendant C & N and offers attorney services within this district and is subject to personal jurisdiction on the basis of the location of his principal place of business at 100 Quentia Roosevelt Boulevard, Garden City, New York 11501. Mr. Kuller is, upon information and belief a Citizen of the State of New York.

6. Defendant ALEX NOCERINO, Esq ("Nocerino") is an attorney is a partner, associate, employee, staff attorney, contract attorney or "of counsel attorney" of Defendant C & N and offers attorney services within this district and is subject to personal jurisdiction on the basis of the location of his principal place of business at 100 Quentia Roosevelt Boulevard, Garden City, New York 11501. Mr. Nocerino, upon information and belief a Citizen of the State of New York.

7. Defendant SAMEER CHOPRA, Esq ("Chopra") is an attorney is a named partner, partner, associate, employee, staff attorney, contract attorney or "of counsel attorney" of Defendant C & N and offers attorney services within this district and is subject to personal jurisdiction on the basis of the location of his principal place of business at 100 Quentia Roosevelt Boulevard, Garden City, New York 11501. Mr. Chopra, upon information and belief a Citizen of the State of New York.

8. Plaintiff NANCY DONDERO ["Plaintiff "] is an individual who resides in and is a citizen of the State of Florida. She resides and is domiciled 1010 Crescent Beach Road, Vero Beach Florida 32963.

9. Plaintiff suffered a personal injury accident ("Accident") that took place on May 24, 2014 at approximately 3:30 p.m. at 329 West 42d Street, New York, New York.

10. The accident took place as Plaintiff was exiting The Church of the Holy Cross, ("Church") located at that address. She fell on the step or stairs immediately adjacent to the door as she exited the Church.

11. The accident occurred as Plaintiff was exiting the front door of the Church and began to descend. She opened the front door outwards, expecting there to be a step/stair present and attempted to place her foot on the landing/first step ("step" or "stair") immediately outside of the front door.

12. The step/stair adjacent and just outside of the outward-opening door was narrow, insufficient to accommodate her foot and caused her to fall.

13. The top step or stair was dangerous, hazardous, depressed, worn, and dilapidated, was too narrow for safe egress, and violated various provisions of the New York City Administrative Code.

14. There was no handrail.

15. The Church was well aware of, and was already on actual notice of the dangerous condition of the top step or stair as well as the absence of a handrail and the nonconforming nature of it size and condition, in part because of prior complaints and in part because of prior injuries to persons which resulted in litigation against the Church based upon the very same dangerous condition.

16. Although on notice of the dangerous condition, despite the passage of time and despite the opportunity and time to fix the dangerous condition, the Church failed or refused to remedy or fix the dangerous condition.

17. The Church had both actual and constructive notice of the dangerous condition, had that actual and constructive notice for a sufficient period of time such that it could have remedied the dangerous condition or could have adequately warned persons entering and leaving the Church of

the dangerous condition.

18. Although the step or stair was painted yellow, that paint was hidden by the front door, and did not serve to warn a person exiting the Church. The reason that a person exiting the Church would not be warned by the yellow paint was that there was no adequate warning within the Church to advise the persons exiting that a dangerous condition was awaiting on the other side of the door, and that there would be insufficient time for any reasonable person to see the yellow paint prior to placing their foot on the dangerous, undersized step or stair.

19. No reasonable careful person, looking where they were walking, and exercising reasonable care in their egress could see the yellow paint in time to modify their gait or step or avoid the dangerous condition. The dangerous condition was, in effect, a trap.

20. Beyond failing to remedy or fix the dangerous condition, the Church refused to post any adequate signs, notices, warnings, or other safety measures to alert persons that there was a dangerous condition, which was masked and hidden by the door, and which manifested itself in a dangerous step or stair which would become obvious only when the individual had opened the front door outwards and already started to take a step onto the dangerous step or stair or landing just outside of the front door.

21. As a result of the accident, Plaintiff suffered injuries including a trimalleolar fracture of the ankle that involved the lateral malleolus, the medial malleolus, and the distal posterior aspect of the tibia, which can be termed the posterior malleolus. Further, she suffered and continues to suffer neurological and musculature damage in the form of a "drop foot." She is unable to control her foot; unable to completely raise her toes and flex her foot upward at the

ankle toward her shin. She cannot rely upon her right foot. The trauma was accompanied by ligament damage and dislocation. She suffered other bone and soft tissue injuries as well.

22. Defendants were retained on or around December 8, 2016 to provide attorney services to Plaintiff concerning the accident.

23. When Defendants were hired to provide attorney services for a personal injury, they were required to determine the nature of the accident, whether the accident took place because of a dangerous condition, if the accident was the result of a dangerous condition, and whether there was actual or constructive notice of the dangerous condition to the landowner.

24. In order to prove negligence of a landowner, it must be shown that a personal injury was the result of a dangerous condition, of which the landowner had notice, and that the landowner had failed to remediate the dangerous condition, which then proximately led to injury to a person legally on the property of the landowner.

25. After retention, Defendants undertook to prosecute the personal injury claim for Plaintiff.

26. Prior to the date that Defendants prepared a draft summons and complaint, Plaintiff had already retained an expert engineer and obtained an informal report on the dangerous condition manifested on the step or stair of the Church. That report was given to Defendants.

27. The Expert Report was dated May 2, 2016.

28. The Expert was Rusian Solovyev, P.E., on behalf of Structural Engineering Buro, PLLC

29. The Expert provided an expert report with photographs of the subject step or stair.

30. The Expert report stated: "The existing top landing platform and the main entrance stairway are constructed with the solid brownstone blocks. The portion of the top landing is raised relative to the main platform and creates the continuous step along the building wall. The length

of the step, in the direction of travel, varies from 24 inches in the front of the entrance doors, to 2 inches in the front of the exterior walls. The height of the step varies from 5 inches on the West side of the landing platform, to 3.9 inches on the East side of the platform. The surface of the step is partially coated with visible yellow paint."

31. The Expert Report continued: "According to 2008 New York City Building Code, Chapter 10 "Means of Egress", Section 1008.1.5 `Landings at doors' - `"Landings shall have a width not less than the width of the stairway or the door, whichever is the greater. Doors in the fully open position shall not reduce a required dimension by more than 7 inches 078 mm). When a landing serves an occupant load of 50 or more, doors in any position shall not reduce the landing to less than 75 percent of its required width. Landings shall have a length measured in the direction of not less than 44 inches (0118 mm). No exceptions apply to Group A-3 Buildings. - The length of the existing landing platform is 24 inches, which is less than the minimum permitted of 44 inches. Therefore, the length of the landing platform is not meeting the requirements of previous 2008 and current 2014 NYC Building Code. - The width of the existing landing platform with the open door is reduced by more than 75 percent, which is more than the permitted by code. Therefore, the width of the landing platform is not meeting the requirements of previous 2008 and current 2014 NYC Building Code. Also, according to 2008 New York City Building Code, Chapter 10 "Means of Egress", Section 1009.4.2 "Riser height and tread depth" - "Stair riser heights shall be 7 inches (078 mm) maximum and 4 inches (002 mm) minimum. Stair tread depths shall be 11 inches (279 mm) minimum. The riser height shall be measured vertically between the leading edges of adjacent treads. ...." No exceptions apply to Group A-3 Buildings. - The existing height of the raised step is 3.9 inches at the eastern portion of the landing platform, which is less than the

minimum permitted of 4 inches. Therefore, the height of the raised step is not meeting the requirements of the NYC Building Code'."

32. The Report continued that "We believe the current conditions of the landing platform present a hazardous condition for the public safety."

33. On December 29, 2016 Defendants filed a Summons and Complaint under the caption: ***Nancy Dondero v. The Church of the Holy Cross,*** Supreme Court, New York County, Index No. 160957/2016. (NYSCEF Docket 1)

34. On February 16, 2017 the Church filed an answer, (NYSCEF Docket 3) denying actual or constructive notice of the dangerous condition and denying that any dangerous condition existed.

35. Eventually a Note of Issue was filed, and thereafter, a motion for summary judgment was made by Defendants.

36. Defendant's motion for summary judgment (starting at NYSCEF Docket 33) contained an affidavit by Expert engineer, Mark Marpet, Ph. D,, P.E. (NYSCEF Docket 35)

37. This engineer argued that the Church was not subject to the current Building Code, and that, in his opinion, there was no proximate cause connection between the manner in which Plaintiff fell and fractured her ankle and the composition of the steps.

38. The Church's motion for summary judgment relies entirely upon this engineering affidavit. It is black-letter law that if defendant moves for summary judgment utilizing an engineer's expert affidavit, then Plaintiff must oppose the motion with an engineer's expert affidavit.

39. This is true even more especially when the movant's expert affidavit refers to a prior Plaintiff's expert report and seeks to denigrate its opinions. Not only is an expert's affidavit required in opposition, but that expert affidavit must address the denigrating comments.

40. Defendant attorneys understood that the use of an expert's affidavit in opposition to the motion for summary judgment that relied in part upon the Church's expert was the standard of good practice by an attorney in opposing a motion for summary judgment.

41. Defendant attorneys understood that the standard of practice required the use of a proper, competent and admissible expert affidavit.

42. However, even while understanding the requirement of a proper, competent and admissible expert affidavit, Defendant attorneys instead tried to re-use the letter report, which was not sworn, not an affidavit and not notarized.

43. Defendant attorneys utilized the report prepared prior to the Complaint being filed, and did not seek to have the expert address the denigrating comments made by the Church expert's affidavit.

44. Beyond failing to obtain an expert's affidavit that utilized the contrary Church expert affidavit, Defendants offered a document that was inadmissible. The engineer's report filed by the attorneys was not sworn, not an affidavit and not notarized. It was offered at NYSCEF Docket 49.

45. It is well settled law that there is a significant difference between a writing of an engineer-expert and the sworn statement of an engineer-expert. While easily accomplished, there is very significant importance to a sworn statement of an engineer-expert as against the unsworn statement of the same engineer-expert.

46. It is well settled law that unsworn reports of experts are inadmissible at a summary judgment motion. It is well settled law that the report will not be permitted as opposing evidence at the motion and that the Court will not take cognizance of, nor rely upon the unsworn, non-affidavit of a purported expert.

47. Supreme Court quoted from the "Affidavit of Defendant's Expert" Mark I. Marpet Ph.D. at page 4 of the Decision and Order on the Motion for Summary Judgment. (NYSCEF Docket 63)

48. Supreme Court found at page 6 of the Decision and Order that "Plaintiff submits an unsigned and unsworn letter, dated May 2, 2016 of her expert Solovyev, who inspected the subject step on April 28, 2016 (prior to the commencement of this action)"

49. In Reply, the Church argued that no issue of fact was raised. The Church argued that it was never on actual or constructive notice that the step or stair was dangerous, and that building codes did not apply to the Church built prior to the imposition of the NYC Building Codes.

50. The Church further argued that the absence of a proper, competent and admissible Expert report doomed any opposition to the motion for summary judgment and required a finding that no issues of fact had or could be raised.

51. Defendants failed to research prior accidents at the Church. It is the standard of practice for a reasonable attorney to research whether there had been prior accidents at the site where a personal injury occurred.

52. Defendants could have sought publicly available evidence of prior accidents, such as police reports, medical reports, prior CIB reports made by insurers, and most importantly, could have searched publicly available databases of prior litigation and prior accidents which had taken place at the Church.

53. Had defendants done any research, a simple name search would have found that an exactly similar accident had happened on May 14, 2011 at the exact same location, at the exact same step and in an excruciatingly similar manner. The affirmative use of the case of ***Baker v. Roman Catholic See and the Holy Roman Church,*** Supreme Court, New York County, Index No. 113884/2011 would have demonstrated prior notice of the dangerous and defective land condition to the landowner, and would have put the lie to testimony that the Church was unaware of any prior accidents.

54. Supreme Court found in the *Dondero* Decision and Order that: "Generally, `in order to make out a prima facie case of negligence involving defective or dangerous conditions present on property, a plaintiff must demonstrate either that the defendant created the alleged hazardous condition or that defendant had actual or constructive notice of the defective condition'"

55. A prior accident at the same exact spot and in the same exact manner would have (at a minimum) have created a question of fact as to both actual and constructive notice dating some 5 years prior to the Dondero accident.

56. The Court found that: "The opinion letter of plaintiff's expert Solovyev is unsigned and unsworn and is therefore not competent evidence. As such said report cannot be considered by this Court." (citations omitted) It further found (p.12) that "[R]ank speculation is no substitute for evidentiary proof in admissible form that is required to establish the existence of a material issue of fact and, thus, defeat a motion for summary judgment."

57. On this basis Supreme Court granted the motion for summary judgment.

## FIRST CAUSE OF ACTION
## LEGAL MALPRACTICE

58. The authorship, creation, review, analysis and management of the case and the Opposition to a motion for summary judgment was a departure from good and accepted practice evidencing a failure by Defendants to exercise the degree of care commonly exercised by an ordinary attorney under similar circumstances with respect to its client, the Plaintiff.

59. Defendants failed to exercise the ordinary, reasonable skills and knowledge commonly possessed by a member of the legal profession, especially attorneys who practice in personal injury law in the preparation of the case and the opposition to the motion for summary judgment.

60. Defendant law firm had previously on multiple occasions prepared cases and undertaken opposition to the motion for summary judgment

61. Defendant law firm was aware of or should have been aware of cases and case law concerning actual or constructive notice to landowners of a dangerous or defective condition that had been adjudicated by the Appellate Division.

62. Even while aware of the prevailing law in the First Department, and aware of an authoritative method of creating an expert's affidavit for use in opposing a motion for summary judgment, Defendants, failed to prepare admissible opposition to a motion for summary judgment.

63. This failure to exercise the ordinary, reasonable skills and knowledge commonly possessed by a member of the legal profession, proximately caused damage to Plaintiff.

64. The opposition was not written with precise and proper language, did not offer admissible expert opinion, did not recite the actual and constructive notice that the Church had from prior

litigation, was not fit for the purpose described to Plaintiff, was not a proper opposition, was not an admissible expert affidavit and failed to contain the necessary and required language to properly be admissible and oppose the motion for summary judgment..

65. Defendants failed to research prior accidents at the same Church in the past. Although the case of *Baker v. Holy See* was discussed in the motion practice, Defendants failed to understand that the *Baker* accident took place on the very same step or stair at the very same Church. The mechanism of the fall was exactly the same. The *Baker* fall took place years prior to Plaintiff's fall.

66. Defendants negligently failed to argue that *Baler* provided proof of actual as well as constructive notice of the dangerous step and lack of handrail. When given the chance to argue, instead of showing that the accidents were exactly the same, and in the same place at the same Church, defendants sought to show that the accident sites were in different Churches, losing the ability to prove actual and constructive notice of the dangerous condition.

67. Had Plaintiff been properly defended on the motion for summary judgment there would have been a denial of the motion on the basis that there were issues of fact on the nature of the dangerous and defective condition as well as actual prior notice of that condition.

68. Because Plaintiff was inadequately represented and was incorrectly represented her case was dismissed. This dismissal damaged Plaintiff.

69. The damage consisted of that value of just and fair and adequate compensation for injuries which Plaintiff would have won from Defendants together with the costs and disbursements in the Action and which cannot be recovered.

70. This failure to exercise due care was the proximate cause of financial injury to Plaintiff alleged above.

71. "But for" these failures, Plaintiff would have been obtained just, fair and adequate compensation for her physical injuries along with additional costs all required to avoid, minimize or reduce damages caused by Defendants' negligent conduct.

72. By reason of the foregoing, Plaintiff is entitled to judgment against Defendants in an amount which exceeds the jurisdiction of all lower courts.

**SECOND CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**

73. Plaintiff re-alleges the allegations contained in preceding paragraphs with the same force and effect as if separately set forth and numbered herein.

74. By virtue of the attorney-client relationship, Defendants owed Plaintiff a fiduciary duty to deal fairly, honestly and with undivided loyalty, including maintaining confidentiality, avoiding conflicts of interest, operating competently, safeguarding client property and honoring the client's interests over their own, performing the work in a timely fashion, not incurring unnecessary work or expenses, acquainting the firm with up-to-date information on the rights and liabilities in the subject area and in general, being knowledgeable about how to prosecute a personal injury case, how and when to file opposition and knowing the procedural tax rules.

75. Defendants were under a duty to Plaintiff to act for her, to act correctly for her, aid in Plaintiff's investigations, and to avoid conflicts of interest in its representation of Plaintiffs by performing work that was unnecessary, contra-indicated, not solely for her benefit firm and of no

benefit to the client, to give advice for Plaintiff's benefit on all matters within the scope of the representation of Plaintiff and not to place their own interests ahead of Plaintiff's.

76. Defendants were under a fiduciary duty to avoid engaging in conduct which caused financial harm to Plaintiff and to avoid engaging in conduct which was unnecessary, counter-productive, counter-indicated or simply wrongful.

77. While acting as an attorney for, and performing work for Plaintiff, Defendants failed to engage in work that was necessary, engaged in work that was unnecessary, engaged in work and delays that were counter-productive, counter-indicated, or simply worthless.

78. Defendants performed legal work that was of no value, caused delay and lost the opportunity to obtain adequate and fair compensation for Plaintiff's injuries and damages.

79. It was a breach of fiduciary duty to engage in any of these acts. This breach of fiduciary duty caused Plaintiff to pay for unnecessary or contra-indicated services, become billed for those and similarly wrongful services, all to the detriment of Plaintiff.

80. Defendants breached their fiduciary duty to Plaintiff by performing work that was unnecessary, counter-indicated, solely for the benefit of the firm and of no benefit to Plaintiff on all matters within the scope of the representation of Plaintiff.

81. That breach of fiduciary duty was a substantial factor in damages to Plaintiff and the conflict of interest between Defendants' own interests along with the delay, excessive litigation, unnecessary litigation, and loss of the ability to move forward on the litigation.

82. But for the acts of, and fiduciary advice of Defendants, Plaintiff would have obtained fair and adequate compensation for her injuries and damages.

83. Defendants were in violation of their fiduciary duties, were in breach of fiduciary duty, and were in violation of their ethical obligations of attorneys to their client.

84. These violations and breaches were a substantial factor in the negative financial outcome for Plaintiff, and proximately caused financial damage to Plaintiff.

85. As a proximate result of these shortcomings in representation, Plaintiff has been damaged by this breach of fiduciary duty and the attendant conflict of interest between Defendants and Plaintiff in an amount to be determined by the Court.

86. By reason of the foregoing violations and breaches, Plaintiff is entitled to judgment against Defendants for a sum to be determined based on the fiduciary duty claim.

WHEREFORE, Plaintiff demands judgment against Defendants for an amount to be determined at trial, disgorgement of previously paid legal fees, together with the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

Dated: New York, New York
July 13, 2020

*Andrew Lavoott Bluestone*

Andrew Lavoott Bluestone
233 Broadway, Suite 2702
New York, NY 10279
(212) 791-5600